IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

SEMAETE ERMIAS,           )
                          )
            Plaintiff,    )
                          )
    v.                    )   Civil Action No. 1:16cv0587 (AJT/JFA)
                          )
TIBEBE TILAHUN, et al.,   )
                          )
            Defendants.   )
_____)

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiff's Motion for Default Judgment (Docket no. 59). In this action, Semaete Ermias ("plaintiff" or "Ermias") seeks a default judgment against Tibebe Tilahun ("Mr. Tilahun"), Mesay Mekonen ("Ms. Mekonen"), and Lena Skyline Management, LLC ("Lena Skyline") (collectively "defendants"). Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties.

### Procedural Background

On May 27, 2016 plaintiff filed the complaint in this action alleging breach of contract against defendants Mr. Tilahun, Mr. Tilahun's wife Ms. Mekonen, and Lena Skyline. (Docket no. 1) ("Compl."). Due to plaintiff's belief that Genet Gorems ("Ms. Gorems") possessed power of attorney on behalf of the defendants, Mrs. Gorems was served with process as to Mr. Tilahun and Lena Skyline on July 27, 2016 (Docket nos. 9, 10), and was served with process as to Ms. Mekonen on August 11, 2016. (Docket no. 13). If service on Ms. Gorems had constituted proper service as to the defendants, then, in accordance with Fed. R. Civ. P. 12(a), defendants' responsive pleadings would have been due twenty-one days after service on Ms. Gorems. That

is, Mr. Tilahun's and Lena Skyline's responsive pleading would have been due on August 17, 2016 and Ms. Mekonen's responsive pleading would have been due on September 1, 2016. Defendants have not filed any responsive pleadings.

On August 22, 2016, the District Judge entered an Order instructing plaintiff to immediately obtain an entry of default from the Clerk of Court pursuant to Fed. R. Civ. P. 55(a), and subsequently file a motion for default judgment, an accompanying memorandum, and a notice setting a hearing on the motion for September 23, 2016. (Docket no. 12). On September 6, 2016, plaintiff filed his first request for entry of default as to the defendants (Docket nos. 14, 20, 21) and the Clerk of Court entered default against the defendants that day (Docket nos. 19, 31). On September 6, 2016 plaintiff filed his first motions for default judgment as to all defendants (Docket nos. 16, 25, 26) and affidavits in support of the motions (Docket nos. 17, 28, 29). Plaintiff also filed certificates of service asserting that copies of the requests for entry of default and motions for default judgment were mailed to Ms. Gorems. (Docket nos. 24, 27). On September 9, 2016, plaintiff filed a notice of hearing, setting the hearings on the motions for default judgment for September 23, 2016. (Docket nos. 32, 34).

On September 16, 2016, the undersigned entered an Order directing plaintiff to file a supplemental memorandum detailing how service on Ms. Gorems constituted proper service. (Docket no. 35). Plaintiff responded by filing a supplemental memorandum on September 20, 2016, in which he explained that he learned of Ms. Gorems through former employees of Mr. Tilahun. (Docket no. 36). These former employees told plaintiff that Mr. Tilahun and Ms. Mekonen left the United States for Ethopia in January 2014. (Docket no. 36 ¶ 3A). They indicated that Mr. Tilahun subsequently emailed them and directed them to settle their financial obligations with Ms. Gorems, who he indicated was his power of attorney. (Docket no. 36 ¶ 3F).

2

On September 23, 2016, plaintiff appeared before the undersigned for the first motion for default judgment hearing and no one appeared on behalf of the defendants. (Docket no. 37). The same day the undersigned denied plaintiff's motions for default judgment without prejudice. (Docket no. 38). On September 27, 2016, plaintiff filed a supplemental memorandum further detailing his knowledge of Ms. Gorems' status as defendants' power of attorney. (Docket no. 39). The undersigned then entered an Order authorizing the Clerk to issue a subpoena to Ms. Gorems requiring the production of a copy of any power of attorney or other authorization indicating she had been appointed to act on defendants' behalf. (Docket no. 42). The subpoena was issued by the Clerk to Ms. Gorems (Docket no. 44), and was served on her on October 24, 2016 (Docket no. 46). In response to the subpoena, Ms. Gorems filed a letter with the court asserting that she has no such documents. (Docket no. 47). The undersigned then held a status conference on November 18, 2016 to address the issues of service with plaintiff. (Docket no. 49). At the status conference, the undersigned extended the time in which plaintiff could complete service on defendants and plaintiff produced various documents related to the defendants' current status.

Following additional briefing submitted by plaintiff (Docket no. 51), on March 24, 2017, the undersigned entered an Order authorizing plaintiff to serve defendants through the email addresses wisdomccc@gmail.com and wisdomtax@gmail.com (Docket no. 52). Plaintiff then filed a certificate of service, representing that on April 3, 2017 he sent a copy of the complaint and its exhibits, the summons, and the undersigned's Order authorizing alternative service to the email addresses as directed by the undersigned. (Docket no. 53). In accordance with Rule 12(a), defendant's responsive pleadings were due on April 24, 2017, twenty-one days after service of process. Because defendants did not timely file a responsive pleading, plaintiff requested entry

of default as to the defendants on May 1, 2017 (Docket no. 54), which the Clerk of Court entered on May 3, 2017 (Docket no. 56).

On June 22, 2017, the District Judge entered an Order directing plaintiff to file a motion for default judgment and supporting memorandum, and notice that motion for a hearing before the undersigned on July 21, 2017. (Docket no. 57). On July 14, 2017, plaintiff filed the motion for default judgment (Docket no. 59), an affidavit in support of the motion (Docket no. 60), notice setting hearing on the motion for July 21, 2017 (Docket no. 61), and a certificate of service asserting that copies of the request for entry of default, supporting affidavit, entry of default by the Clerk of Court, and the District Judge's Order were sent by email to wisdomtax@gmail.com and wisdomccc@gmail.com (Docket no. 58). On July 18, 2017, plaintiff filed another certificate of service affirming that the motion for default judgment, notice, and affidavit in support of the motion for default judgment were sent by email to the same email addresses on July 17, 2017. (Docket no. 62). At the motion for default judgment hearing before the undersigned on July 21, 2017, plaintiff appeared and no one appeared on behalf of any defendants.

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). Based on defendants' failure to file a responsive pleading in a timely manner, the Clerk of Court has entered a default as to all defendants. (Docket no. 56).

A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a

responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment. Plaintiff alleges that this matter is properly brought in this court under 28 U.S.C. § 1332 based on complete diversity of citizenship and an appropriate amount in controversy. (Compl. ¶ 1).

Plaintiff is an individual resident of Maryland.[1] The citizenship of the individual defendants Mr. Tilahun and Ms. Mekonen is unknown; however, the complaint identifies addresses in Ethopia and Virginia for Mr. Tilahun and Ms. Mekonen, respectively. (Compl. at 1). Ms. Mekonen, a member of Lena Skyline, is the wife of Mr. Tilahun, the managing partner of Lena Skyline. (Compl. ¶ 2). Defendant Lena Skyline is a limited liability company that is organized under the laws of Virginia. (Docket no. 6-1 at 4). For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of its members. *See, e.g., Cent. West Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011). Although the members of Lena Skyline include Mr. Tilahun and Ms. Mekonen, full membership is unknown. (Compl. ¶ 2). Plaintiff's complaint also seeks a

---

[1] Although plaintiff does not allege his citizenship in the complaint and the docket sheet only contains a P.O. box mailing address located in Maryland, plaintiff confirmed at the first motion for default judgment hearing before the undersigned that he resides in Maryland and resided there at the time of the filing of the complaint.

judgment in excess of $75,000. (Compl. ¶¶ 1, 3). Given these uncontested allegations, it appears that this court has jurisdiction over the dispute pursuant to 28 U.S.C. § 1332.

This court has personal jurisdiction over the defendants because Virginia's long-arm statute authorizes the exercise of jurisdiction and defendants satisfy the minimum contacts test under the Due Process Clause of the Fourteenth Amendment. *See CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 (4th Cir. 2009). Specifically, all defendants entered into a contractual agreement with plaintiff in this District and have failed to perform the terms of the contract, thus causing injury to plaintiff in this District. (Compl. ¶¶ 1, 2). Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Virginia. (Compl. ¶ 1).

For these reasons, the undersigned recommends a finding that this court has subject matter jurisdiction over this action, that the court has personal jurisdiction over the defendants, and that venue is proper in this court.

## Service

The issue of service has been extensively addressed in this matter. On March 24, 2017, the undersigned authorized plaintiff to serve defendants through the e-mail addresses wisdomccc@gmail.com and wisdomtax@gmail.com. (Docket no. 52). Plaintiff filed a certificate of service on April 6, 2017, certifying that on April 3, 2017, he sent a copy of the complaint and its exhibits, the summons, and the Order authorizing alternative service to the e-mail addresses wisdomccc@gmail.com and wisdomtax@gmail.com. (Docket no. 53).

Accordingly, the undersigned recommends a finding that the defendants were served properly with the summons and complaint.

## Grounds for Entry of Default

In accordance with Federal Rule of Civil Procedure 12(a), defendants' responsive pleadings were due April 24, 2017, twenty-one days after service of process. No responsive pleading has been filed and the time for doing so has expired. On May 1, 2017, plaintiff filed a request for entry of default against the defendants (Docket no. 54), which the Clerk of Court entered on May 3, 2017 (Docket no. 56). On June 22, 2017, the District Judge entered an Order directing plaintiff to file a motion for default judgment, supporting memorandum, and notice it for a hearing before the undersigned on July 21, 2017. (Docket no. 57). Plaintiff filed the motion for default judgment, affidavit in support, and notice of hearing on July 14, 2017. (Docket nos. 59–61). Plaintiff also filed certificates of service indicating that defendants were served with copies of these pleadings through the e-mail addresses widsomtax@gmail.com and wisdomccc@gmail.com on July 14, 2017 and July 17, 2017. (Docket nos. 58, 62).

Accordingly, the undersigned recommends a finding that the Clerk of Court has properly entered a default as to the defendant.

## Liability

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because defendants failed to file a responsive pleading and are in default, they admit the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6). The following facts are established by the complaint. (Docket no. 1).

Plaintiff is an individual resident of Maryland. (Compl. at 1). Ms. Mekonen, a member of Lena Skyline, is the wife of Mr. Tilahun, the managing partner of Lena Skyline. (Compl. ¶ 2). Defendants Mr. Tilahun and Ms. Mekonen are individuals with mailing addresses in Ethopia and Virginia, respectively. (Compl. at 1). Defendant Lena Skyline is a Virginia limited liability

7

company, whose complete membership is unknown but co-defendants Mr. Tilahun and Ms. Mekonen are members. (Compl. ¶ 2).

This matter involves three loan agreements, in which defendants were loaned a total of $137,500.00. The first agreement was executed by plaintiff and the three defendants on May 27, 2011. (Docket no. 1-1). Under the terms of this agreement, plaintiff provided $30,000 to defendants, distributed in two installments of $15,000. (*Id.*). The agreement provided that the defendants were jointly and severally liable for the loan, and would repay plaintiff by two $20,000 installments on August 15, 2011 and September 15, 2011. (*Id.*). The agreement also contained a penalty for late payments. Pursuant to this penalty, any delay in payment by more than five days would result in a $2,500 late fee for each thirty-day period in which the loan was not repaid.[2]

The second loan agreement was executed on July 5, 2011 between plaintiff and the three defendants. (Docket no. 1-3). Pursuant to this agreement, plaintiff lent defendants $7,500, and defendants were to repay plaintiff $10,000 by September 20, 2011. (*Id.*). The defendants were to be held jointly and severally liable for this payment, and the agreement provided that any delay in payment by defendants beyond five days would result in a $625.00 penalty for each thirty-day payment delay. (*Id.*).[3]

---

[2] The agreement specifically provides: "Delay beyond 15 (five) grace days after the maturity date of the promissory note will cost borrowers $2,500 on each delayed installment payment of $20,000 for each additional days of 30 days or a portion [thereof]." (Docket no. 1-1). Although this agreement indicates both a five and fifteen-day grace period, it is likely that "15" was a typographical error since the other agreements provide for only a five day grace period.

[3] The agreement specifically provided the following: "$10,000 total payments back to Lender, Semaete Ermias, shall also be done in one installment[]. Delay beyond 5 (five) grace days after the maturity date of the promissory note September 20, 2011 will cost borrowers

8

The third loan agreement was also executed on July 5, 2011 with the lenders being both plaintiff individually and Beqa Kim, LLC ("Beqa Kim").[4] (Docket no. 1-4). This agreement provided that both plaintiff and Beqa Kim would each extend a $50,000 loan to all three defendants. (*Id.*). The defendants were to be held jointly and severally liable for this loan, and were required to repay plaintiff and Beqa Kim a total amount of $136,000 for this loan within 180 days of disbursement. (*Id.*). As with the other agreements, defendants would be subject to a late fee of $6,000 for each thirty-day period in which the loan was not repaid, beginning five days after the date the loan matured. (*Id.*).

Defendants made partial payments on the loans from August 30, 2011 through March 27, 2013 totaling $70,764.84. (Compl. ¶ 2). During that time, eight of defendants' payments were returned due to insufficient funds and Mr. Tilahun requested an extension of time to repay the loans on two occasions. (*Id.*). Plaintiff last received payment from defendants on March 27, 2013 and has not been contacted by the defendants since March 21, 2013. (*Id.*). Plaintiff believes that the individual defendants fled to Ethiopia in January 2014. (*Id.*). At the time of the filing of this complaint, plaintiff alleged that the total amount due by the defendants totals $274,487.56. (Compl. ¶ 3).

Although the allegations contained in plaintiff's complaint are deemed to be uncontested, plaintiff has not provided a sufficient basis to allow him to pursue recovery on behalf of Beqa Kim, of which plaintiff alleges he was a manager. (Compl. ¶ 2).[5] "[I]t is well settled that a

---

$625.00 on each delayed installment payment of [$]7,500.00 for each additional days of 30 days or a portion thereof." (Docket no. 1-3).

[4] In some pleadings, this entity is also referred to as "Beka Kim LLC."

[5] A review of the Virginia Secretary of the Commonwealth business entity search reveals that Beqa Kim, LLC was registered as a limited liability company on June 14, 2010 with a

9

corporation must be represented by an attorney in federal court." *In re Tamojira, Inc.*, 20 F. App'x 133, 133–34 (4th Cir. 2001). This court has extended this rule to apply to limited liability companies. *Vick v. Wong*, 263 F.R.D. 325, 328 n.1 (E.D. Va. 2009) ("[A] limited liability company... cannot appear *pro se*, even if represented by one of its members, but must be represented by an attorney."). Accordingly, plaintiff may not recover for the loans made by Beqa Kim.[6]

Notably, the loan agreements provided by defendant are signed only by Mr. Tilahun individually and Lena Skyline. (Docket nos. 1-1; 1-3; 1-4). However, plaintiff has included Lena Skyline's corporate resolution adopting the first and third loan agreements. (Docket nos. 1-2; 1-5). In these corporate agreements, Ms. Mekonen agrees to fully assume and personally guarantee Lena Skyline's obligations to plaintiff regarding the first and third loans. (*Id.*). No such document has been submitted as to the second loan agreement. Accordingly, the undersigned recommends that Ms. Mekonen is not personally liable for any obligations under the second loan agreement.

Based on the foregoing, a finding that plaintiff has established a claim for breach of contract, but only as to the loans he made individually, is recommended. The undersigned further recommends a finding that all three defendants breached the first and third loan agreements, and that only Mr. Tilahun and Lena Skyline breached the second loan agreement.

---

principal office in Alexandria, Virginia, but has been cancelled. The registered agent of Beqa Kim, LLC was Wisdom Financial Corporation. The Virginia Secretary of the Commonwealth business entity search of Wisdom Financial Corporation reveals that this entity has also been cancelled, and that its registered agent was Tibebe Tilahun. In one of plaintiff's supplemental briefs, he indicates that the individual defendants inserted an "unauthorized clause in the Articles of Organization of Beqa Kim LLC," but it is unclear exactly what plaintiff is referring to. (Docket no. 6 ¶ 3).

[6] This issue was addressed at plaintiff's first motion for default judgment hearing, and plaintiff submitted a supplement explaining that he still wished to recover on behalf of Beqa Kim and could not hire an attorney due to a lack of funds. (Docket no. 43 at 2).

## Measure of Damages

Plaintiff's complaint seeks judgment for the amount outstanding under the three loan agreements plus interest and penalties as described in the original contracts. (Compl. ¶ 3). At the time of the filing of this complaint, that amount was $274,487.56. (*Id.*).[7]

**Breach of Contract**

A federal court sitting in diversity jurisdiction must apply state substantive law as announced by the state's highest court. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Under Virginia law, the required elements for proving breach of contract are: "(1) a legal obligation of a defendant to the plaintiff; (2) a violation or breach of that right or duty; and (3) a consequential injury or damage to the plaintiff." *Westminster Investing Corp. v. Lamps Unlimited, Inc.*, 237 Va. 543, 379 (1989) (quoting *Caudill v. Wise Rambler, Inc.*, 210 Va. 11, 13 (1969)). Plaintiff alleges that defendants breached the three loan agreements by their failure to pay plaintiff as required. (Compl. ¶¶ 1, 2). Under the terms of the loan agreements, plaintiff individually loaned the defendants a total of $87,500.00, in return for defendants' agreement to repay the loans within 75 or 180 days with specific interest. (Docket nos. 1-1; 1-3; 1-4). The notes also state that the purpose of the funds is to be used for the commercial purpose of renovating a restaurant. (*Id.*). Plaintiff disbursed the funds to the defendants, but has only received partial repayment and has not been in contact with the defendants since March 2013. (Compl. ¶ 2). In support of this action and the motion for default judgment, plaintiff has submitted several spreadsheets detailing the payments made by defendants to plaintiff on the three loans. (Docket no. 6-1). These

---

[7] This amount also includes the payments due to Beqa Kim. In plaintiff's affidavit in support of this motion for default judgment, he seeks an amount of $115,220.29 as of July 30, 2017. (Docket no. 60). However, this amount appears to be calculated at a 12% interest rate. (*See* Docket no. 45-1). As discussed in this section, plaintiff may not be bound by the Virginia prohibition on usurious interest rates, so he may not be limited to a 12% interest rate.

spreadsheets reveal that plaintiff has received a total of $22,776.84 from defendants, comprising of $13,928.00 for the first loan (Docket no. 6-1 at 41), no payments for the second loan (Docket no. 6-1 at 42), and $8,848.84 for the third loan (Docket nos. 6-1 at 45–46; 42-1). The unpaid amount of plaintiff's principal on the three loan agreements is thus $64,723.16, comprised of $16,072.00 unpaid for the first loan, $7,500.00 unpaid for the second loan, and $41,151.16 unpaid as to plaintiff individually for the third loan.[8]

Plaintiff also seeks an award of interest due under the loan agreements. Each agreement provided that within 75 or 180 days of disbursement, the defendants were to fully repay the loan with an additional "balloon" payment. (Docket nos. 1-1; 1-3; 1-4). If full payment was not made within five days of the payment due date, defendants were to be charged an additional penalty for every thirty days that plaintiff was not repaid. (*Id.*).

The first loan agreement provided that plaintiff was to pay defendants a total of $30,000, divided into two $15,000 installments. (Docket no. 1-1). Within seventy-five days of disbursement, defendants were to pay plaintiff $20,000, for a total of $40,000. (*Id.*). If plaintiff did not receive full payment within five days of the payment's due date, defendants were to pay an additional $2,500 for each thirty-day delay. (*Id.*). In the second agreement, plaintiff loaned defendants $7,500, in exchange for their agreement to repay plaintiff $10,000 within seventy-five days of disbursement. (Docket no. 1-3). If full payment was not made within five days of the payment's due date, defendants would be charged $625.00 for each thirty-day payment delay. (*Id.*). Lastly, in the third agreement executed by the parties, plaintiff individually loaned

---

[8] Plaintiff has also submitted exhibits regarding defendants' repayment of the Beqa Kim loan. One spreadsheet indicates that defendants have paid $47,988.00 (Docket no. 6-1 at 44), while another indicates that defendants have repaid $48,000.00 (Docket no. 45-2). Because plaintiff cannot recover on behalf of the limited liability company, this discrepancy is not further examined in this proposed findings of fact and recommendation.

defendants $50,000 and Beqa Kim loaned an additional $50,000. (Docket no. 1-4). This loan required the defendants to make one $136,000.00 payment, to be split equally between the two lenders, within 180 days of disbursement. (*Id.*). Accordingly, plaintiff was to receive a payment of $68,000 from this loan. (*Id.*). Any delay in payment beyond five days past the loan's maturity date would result in a $6,000 total penalty, thus a $3,000 penalty due to plaintiff individually, for every additional thirty-day delay. (*Id.*).

At the hearing on plaintiff's first motions for default judgment, the undersigned advised plaintiff that certain Virginia statutes may bar plaintiff's recovery of the contractual interest rates. The Virginia Code provides that loan agreements in which the interest rate exceeds twelve percent per year shall not be enforceable. Va. Code § 6.2-303. However, this usury defense does not apply to loans of over $5,000 made for business or investment purposes. Va. Code § 6.2-317; *see also Berry v. Martens*, 58 Va. Cir. 315, 2002 WL 921069, at *2 (Mar. 7, 2002). Here, all three loan agreements provided that "funds from [these loans] are to be used strictly for the commercial purpose of renovating the restaurant unit located at 3821 D S George Mason Dr[.]" (Docket nos. 1-1; 1-3; 1-4). Because these loans were made for business or investment purposes, the usury statute may not apply.

The first loan agreement requires the defendants to make two $20,000 payments to plaintiff by August 15, 2011 and September 15, 2011. (Docket no. 1-1). To the extent these payments are not made in full by August 20, 2011 and September 20, 2011, respectively, defendants incur an additional $2,500 obligation to plaintiff. (*Id.*). Then, for every additional thirty-day payment delay, defendants will be charged an additional $2,500. (*Id.*). At this time, plaintiff has only received a total payment of $13,928.00 from defendants under this agreement. (Docket no. 6-1 at 41). There have been seventy-two and seventy-one thirty-day periods since

the dates the $2,500 interest rates were set to begin. Accordingly, plaintiff is entitled to 143 payments of $2,500 from defendants as interest for their failure to fully repay the first loan agreement, which is $357,500.00. This amount is due in addition to the $40,000 payments the defendants agreed to repay. (Docket no. 1-1). Considering the $13,928.00 that defendants have already paid plaintiff (Docket no. 6-1 at 41), the undersigned recommends that all three defendants owe plaintiff an amount of $383,572.00 pursuant to the first loan agreement.

Pursuant to the second loan agreement, Mr. Tilahun and Lena Skyline were required to repay plaintiff $10,000 by September 20, 2011. (Docket no. 1-3). If plaintiff was not paid in full by September 25, 2011, Mr. Tilahun and Lena Skyline incurred an additional $625.00 obligation. (*Id.*). Then, every any additional thirty-day delay in full repayment would cause Mr. Tilahun and Lena Skyline to incur another $625.00 obligation. (*Id.*). The documents provided by plaintiff indicate that Mr. Tilahun and Lena Skyline have made no payments toward the second loan. (Docket no. 6-1 at 42). Since September 25, 2011, Mr. Tilahun and Lena Skyline are liable for seventy-one additional thirty-day payment periods, totaling $44,375.00 in interest payments due. This interest rate is in addition to the $10,000 Mr. Tilahun and Lena Skyline agreed to repay. Accordingly, the undersigned recommends that in regard to the second loan agreement, Mr. Tilahun and Lena Skyline are liable to plaintiff for a total amount of $54,375.00.

Lastly, the third loan agreement, as it relates to plaintiff individually, obligated all three defendants to repay plaintiff $68,000 by January 31, 2012. (Docket no. 1-4). To the extent full payment was not received by February 5, 2012, defendants would be charged an additional $3,000. (*Id.*). Then for every additional thirty-day period in which plaintiff was not fully reimbursed, defendants were to incur an additional $3,000 obligation to plaintiff. (*Id.*). Defendants have only paid $8,848.84 toward this loan (Docket no. 6-1 at 46), and there have

been sixty-six thirty-day periods since February 5, 2012, during which defendants have incurred the $3,000 penalty, totaling $198,000.00. Considering the amount due under the loan, defendants' incurred interest, and defendants' payments, the undersigned recommends that all three defendants owe plaintiff $257,151.16 under the third loan agreement.

Accordingly, the undersigned recommends a finding that plaintiff has established a claim for breach of contract against Mr. Tilahun, Ms. Mekonen, and Lena Skyline under the first loan agreement that entitles him to recover $383,572.00. The undersigned further recommends that the plaintiff has established a claim for breach of contract against Mr. Tilahun and Lena Skyline under the second loan agreement that entitles him to recover $54,375.00. Regarding the third loan agreement as to the loan made by plaintiff individually, the undersigned recommends a finding that Mr. Tilahun, Ms. Mekonen, and Lena Skyline breached this agreement and plaintiff is entitled to a judgment of $257,151.16 under that contract.

**Post-Judgment Interest**

In his affidavit in support of his motion for default judgment, plaintiff also seeks post-judgment interest at the statutory rate. (Docket no. 60 at 1). In this federal diversity case, federal law governs the calculation of post-judgment interest. *See Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989). Pursuant to 28 U.S.C. § 1961, a uniform federal rate for post-judgment interest has been established "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Parties may contractually agree to a different rate, but that agreement must be expressed in 'clear, unambiguous and unequivocal language.'" *Braunstein v. Pickens*, 274 F.R.D. 568, 574 (D.S.C. 2011) (internal citations omitted). When there is no clear, unambiguous, and unequivocal agreement to a different rate, the statutory rate applies. *Id.* Here,

there is no indication of a clear, unambiguous, and unequivocal agreement between the parties to set a different rate of post-judgment interest.

Thus, the undersigned recommends a finding that interest subsequent to the date of judgment should be paid in accordance with, and at the rate prescribed by, 28 U.S.C. § 1961.

## Conclusion

For these reasons the undersigned recommends that default judgment be entered in favor of plaintiff Semaete Ermias and against defendants Tibebe Tilahun, Mesay Mekonen, and Lena Skyline Management, LLC in the total amount of $640,723.16 for their breaches of the first and third loan agreements, plus post-judgment statutory interest at the rate prescribed by 28 U.S.C. § 1961. The undersigned further recommends that default judgment be entered in favor of plaintiff Semaete Ermias and against defendants Tibebe Tilahun and Lena Skyline Management, LLC in the amount of $54,375.00 for their breach of the second loan agreement, plus post-judgment statutory interest at the rate prescribed by 28 U.S.C. § 1961.

## Notice

By means of the court's electronic filing system and by emailing a copy of this proposed findings of fact and recommendations to wisdomccc@gmail.com and wisdomtax@gmail.com, the parties are notified that objections to this proposed findings of fact and recommendations must be filed within fourteen (14) days of service of this proposed findings of fact and recommendations and a failure to file timely objections waives appellate review of the substance of the proposed findings of fact and recommendations and waives appellate review of any judgment or decision based on this proposed findings of fact and recommendations.

ENTERED this 31ST day of July, 2017.


John F. Anderson
United States Magistrate Judge

Alexandria, Virginia